**201931558 - WALKER, WANDA J vs. METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS (Court 133)**

Chronological History (non-financial)   Print All

| Summary | Appeals | Cost Statements | Transfers | Post Trial Writs | Abstracts | Parties |
|---|---|---|---|---|---|---|
| Court Costs | Judgments/Events | Settings | Services/Notices | Court Registry | Child Support | Images |

Click column headings to sort. Click again to toggle direction.

Print Events

| Date | Description | Order Signed Date | Post Jdgm | Pages | Volume/Page | Filing Attorney | Person Filing |
|---|---|---|---|---|---|---|---|
| 5/30/2019 | ANSWER ORIGINAL PETITION | | | | | CONDER, DENNIS D. | CROUCH, JOHN |
| 5/30/2019 | ANSWER ORIGINAL PETITION | | | | | CONDER, DENNIS D. | METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS |
| 5/6/2019 | JURY FEE PAID (TRCP 216) | | | | | | |
| 5/6/2019 | ORIGINAL PETITION | | | | | LARKIN, WHITNEY CYNAE | WALKER, WANDA J |

[WS6]



EXHIBIT
A

490544300760034

5/6/2019 2 27 PM
Marilyn Burgess - District Clerk Harris County
Envelope No 33330431
By C Ougrah
Filed 5/6/2019 2 27 PM

# 2019-31558 / Court: 133

CAUSE NO _____

| | | |
|---|---|---|
| WANDA J. WALKER | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| METROPOLITAN LLOYDS | § | |
| INSURANCE COMPANY OF TEXAS | § | |
| and JOHN CROUCH, ET AL. | § | |
| | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT

Plaintiff Wanda J Walker files this Original Petition against Defendants Metropolitan Lloyds Insurance Company of Texas ("Metropolitan Lloyds") and John Crouch ("Crouch") and, in support of her causes of action, would respectfully show the Court the following

### I.
### DISCOVERY CONTROL PLAN

1    This case is intended to be governed by Discovery Level 2 of the Texas Rule of Civil Procedure 190 3

### II.
### PARTIES

2    Plaintiff Wanda J Walker is a Texas resident who resides in Harris County, Texas

3    Metropolitan Lloyds Insurance Company of Texas is an insurance company engaged in the business of insurance in Texas Lloyds regularly conducts the business of insurance in a systematic and continuous manner in Texas and may be served with process by certified mail, return receipt requested, through its registered agent for service of process in the State of Texas,

CT Corporation System, via certified mail at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3140

4      John Crouch is engaged in the business of insurance and claims adjusting in Texas John Crouch can be served with process via certified mail, return receipt requested at P O Box 6040, Scranton, PA 18505-6040

### III.
### JURISDICTION AND VENUE

5      This court has subject matter jurisdiction of this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court

6      Venue is proper in Harris County under Tex Civ Prac & Rem Code § 15 002(a)(1), because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County In particular, Plaintiff's property is located in Harris County, the loss at issue occurred in Harris County, and the adjustment of the claim by Defendants for losses under the policy were conducted in Harris County Investigations and policy and coverage misrepresentations, including communication to and from Defendants and Plaintiff occurred in Harris County

7      The damages sought are within the jurisdictional limits of this court Plaintiff currently seeks monetary relief over $100,000, but not more than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees

### IV.
### FACTUAL BACKGROUND

8      Plaintiff is a named insured under a residential property insurance policy issued by Metropolitan Lloyds, policy No 8811825690 (the "Policy")

9      On or about August 25-29, 2017, Hurricane Harvey, a category 4 hurricane with winds up to 130 mph, struck the Texas coast, including the Houston, Texas area, severely damaging Plaintiff's residential property located at 9011 Grady Street, Houston TX 77016 ("the Property") Specifically, the storm caused extensive damage to the roof, resulting in multiple storm-created openings that allowed water to enter the interior of the home Water intrusion through those storm-created openings caused interior damages to several rooms, including the formal living room, den, hallway, and bedrooms Plaintiff timely filed a claim with Metropolitan Lloyds for her incurred covered losses, claim No JDH07826 (the "Claim")

10     Metropolitan Lloyds assigned John Crouch to inspect the property and adjust the loss

11     Crouch did not conduct a reasonable and thorough investigation of the covered damages In spite of the severe and obvious covered damages, he claimed there were minor storm-related damages He misrepresented the condition of the roof as well as the cause of water intrusion and interior damages The inadequacy of Crouch's inspection is further evidenced by the report he prepared, which claimed that Ms Crouch's property sustained minimal damages from Hurricane Harvey He failed to estimate damages to the roof, the exterior of Ms Crouch's home, and the severely damaged interior, despite taking photographs that clearly show covered damages

12     On or about September 11, 2017, Metropolitan Lloyds relied on and approved Crouch's report that misrepresented the cause, scope, and extent of Plaintiff's covered damages As a result, Metropolitan Lloyds improperly denied and/or underpaid the claim, "we are unable to issue a payment to you because the amount of your loss is less than the amount of your policy deductible "

13     Metropolitan Lloyds failed to thoroughly review and properly oversee the work of its assigned adjusters, ultimately approving an improper adjustment and an inadequate, unfair settlement of the Claim Because of the unreasonable investigation by Metropolitan Lloyds, Crouch and other claim-handling personnel, Plaintiff incurred and will continue to incur damages to her Property

14     Metropolitan Lloyds and Crouch chose to ignore obvious damages to the Property Metropolitan Lloyds relied on Crouch's inadequate investigation in making coverage decisions under the Policy and deciding what amounts, if any, to pay on the claim, which is evidenced by estimates and reports that fail to account for the necessary repairs to the Property

15     Plaintiff is entitled to receive benefits that were covered under the insurance policy However, Metropolitan Lloyds and Crouch performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the Property Defendants have delayed payment for Plaintiff's necessary and covered Property damages under the Policy To date, Metropolitan Lloyds has yet to make a full payment on the Claim

16     Plaintiff was forced to hire her own representatives to inspect and evaluate the obvious damages to the Property that Defendants deliberately ignored to avoid payment on the Claim Additionally, as a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain an attorney to prosecute the Claim for insurance benefits to which she is entitled

17     Lloyds deliberately misrepresented the replacement cost value of Plaintiff's dwelling, for the sole purpose of charging a higher premium and increasing the deductible applicable to claims on the Policy

18      Plaintiff's experience is not an isolated case  The wrongful acts and omissions Metropolitan Lloyds committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Metropolitan Lloyds with regard to handling these types of claims  Metropolitan Lloyds' entire claim process is unfairly designed to reach favorable outcomes for the company at the expense of its policyholders

## V.
## CAUSES OF ACTION

19      Each of the foregoing paragraphs is incorporated by reference in the following

**A.      Breach of Contract (Metropolitan Lloyds Only)**

20      Metropolitan Lloyds had a contract of insurance with Plaintiff    Metropolitan Lloyds breached the terms of that contract by wrongfully denying and/or underpaying the claim and Plaintiff was damaged thereby

21      Due to Metropolitan Lloyds breach of the contract terms and continual denial/underpayment of the claim, Plaintiff continues to sustain damages to her property

**B.      Prompt Payment of Claims (Metropolitan Lloyds Only)**

22      Defendant Metropolitan Lloyds' conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act TEX INS CODE § 542 051 *et seq*  All violations made under this article are made actionable by TEX INS CODE §542 060

23      Defendant Metropolitan Lloyds' failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time-constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX INS CODE §542 055

24      Defendant Metropolitan Lloyds failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes an untimely payment of the claim, in violation of TEX INS CODE §542 056

25      The failure of Defendant Metropolitan Lloyds to pay Plaintiff's claim within the statutory deadlines following its receipt of all items, statements, and forms reasonably requested and required, constitutes an untimely payment of the claim, in violation of TEX INS CODE §542 058

26      Plaintiff, therefore, in addition to Plaintiff's claim for damages, Plaintiff is entitled to interest at the maximum amount permitted under TEX INS CODE §542 060(c) and TEX FIN CODE § 304 003, as well as reasonable and necessary attorney's fees

**C.      Unfair or Deceptive Acts or Practices (All Defendants)**

27      Defendants Metropolitan Lloyds and John Crouch are required to comply with Chapter 541 of the Texas Insurance Code

28      Defendants Metropolitan Lloyds and John Crouch are each individually liable for their unfair and deceptive acts, irrespective of the fact that each was acting on behalf of Metropolitan Lloyds, because each is a "person" as defined by TEX INS CODE § 541 002(2) The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds' plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor" TEX INS CODE ANN § 541 002 (emphasis added)

29      Defendants violated TEX INS CODE § 541 060, concerning unfair settlement practices, by

(1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue,

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear,

(3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim,

(4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim

30   Defendants violated TEX INS CODE § 541 061, concerning misrepresentations of insurance policy, by

(1) making an untrue statement of material fact,

(2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made,

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact,

(4) making a material misstatement of law, and

(5) failing to disclose a matter required by law to be disclosed

31    At all relevant times, Plaintiff was a consumer who purchased insurance products and services from Defendant Metropolitan Lloyds

32    Specifically, Defendants violated the Texas Deceptive Trade Practices Act ("DTPA") in the following respects

(1)    Metropolitan Lloyds and John Crouch represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law,

(2)    Metropolitan Lloyds failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed,

(3)    Metropolitan Lloyds, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by § 17.50(a)(1)(3) of the DTPA, in that Defendants took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code

33    Defendants knowingly committed the acts complained of  As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and TEX INS CODE § 541 152(a)-(b)

**D.**    **Breach of the Duty of Good Faith and Fair Dealing (Metropolitan Lloyds Only)**

34    The Texas Supreme Court has recognized a "duty on the part of insurers to deal fairly and in good faith with their insureds  That duty emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or created by a contract '" *Viles v  Security Nat Ins  Co* , 788 SW 2d 566, 567 (Tex  1990) (*citing Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W 2d 165 (Tex 1987))  Therefore, insured can institute a cause of action against insurers for breach of the duty of good faith and fair dealing

35.    Metropolitan Lloyds and Plaintiff are in a special relationship, created by the insurance contract, giving rise to a duty on the part of Metropolitan Lloyds to deal fairly and in good faith with Plaintiff, who are the insured

36    Defendant Metropolitan Lloyds breached its duty of good faith and fair dealing by

    a    Failing to provide a reasonable basis for denial or underpayment of the claim, and/or

    b    Failing to determine whether there was a reasonable basis for denial or delay of the claim

*Arnold*, 725 S W 2d at 167

37    Specifically, Metropolitan Lloyds denied Plaintiff's claim, misrepresenting that "the amount of your loss is less than the amount of your policy deductible " Defendant's misrepresentation constitutes a breach of its duty of good faith and fair dealing  As fully described above, Defendant Metropolitan Lloyds further breached its duty of good faith and fair dealing by failing to adequately and reasonably investigate and evaluate Plaintiff's claim, although

Metropolitan Lloyds knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear

38. Metropolitan Lloyds systematically and routinely denies or underpays valid claims to the detriment of its policyholders As set forth above, the wrongful acts and omissions Metropolitan Lloyds committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Metropolitan Lloyds with regard to handling these types of claims

39 By virtue of its systematic wrongful denials, Metropolitan Lloyds compels its policyholders to seek legal representation and initiate and maintain a suit to recover an amount due under the policy by offering nothing or substantially less than the amount that will be recovered in a suit brought by the insured

40 Metropolitan Lloyds either failed to adopt or implement reasonable standards for prompt investigation of claims arising under its policies or is deliberately adopting standards calculated to maximize its profit to the detriment of its policyholders Metropolitan Lloyds is knowingly directing its personnel, agents and/or adjusters to undervalue or underpay valid claims

41 Defendant knowingly committed the act of denying and/or underpaying claims without a reasonable basis, therefore, Plaintiff is entitled to actual and exemplary damages at law

**D. Attorney's Fees**

42 Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal

43 Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38 001-38 003 because she is represented by an

attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented

44      Plaintiff further prays that she be awarded all reasonable attorney's fees incurred in prosecuting her causes of action through trial and any appeal pursuant to Sections 541 152 and 542 060 of the Texas Insurance Code

## VI.
## CONDITIONS PRECEDENT

45      All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendants  Pursuant to the statute, Plaintiff served Defendants with a notice of intent to file suit for her claims on July 12, 2018   That notice was provided sixty-one (61) days before the filing of this lawsuit   TEX INS CODE § 542 003(a)

## VII.
## DISCOVERY REQUESTS

46      Pursuant to Rule 194, Defendants are requested to disclose, within fifty (50) days after service of this request, the information or material described in Rule 194 2(a)-(l)

47      Defendants are also requested to respond to the attached interrogatories, requests for production, and requests for admissions within fifty (50) days, in accordance with the instructions stated therein

## VIII.
## JURY DEMAND

48      Plaintiff hereby requests that all causes of action alleged herein be tried before a jury of citizens residing in Harris County, Texas, and concurrently with the filing of this petition tender the appropriate jury fee

Page 11 of 12

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Wanda Walker prays that, upon

final hearing of the case, she recover all damages from and against Defendants that may reasonably

be established by a preponderance of the evidence, and that she be awarded attorney's fees through

trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and

further relief, general or special, at law or in equity, to which Plaintiff may show herself to be

justly entitled

Respectfully submitted,

By:  */s/ Whitney C  Larkin*
      Whitney C  Larkin
      State Bar No  24078828
      wlarkin@triallawfirm com
      **CLARK, LOVE & HUTSON, G.P.**
      440 Louisiana St , Suite 1600
      Houston, Texas 77002
      (713) 757-1400 (Office)
      (713) 759-1217 (Facsimile)
      **LEAD COUNSEL FOR PLAINTIFF**

5/30/2019 5:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 33990997
By: EVELYN PALMER
Filed: 5/30/2019 5:03 PM

CAUSE NO. 2019-31558

| | | |
|---|---|---|
| WANDA J. WALKER, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS AND | § | |
| JOHN CROUCH, | § | |
| | § | |
| Defendants. | § | 133RD JUDICIAL DISTRICT |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every, all and singular, the allegations contained within Plaintiff's Original Petition, and demands strict proof thereon by a preponderance of the credible evidence in accordance with the Constitution and laws of the State of Texas.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiff for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiff is not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiff by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1. **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A.   the dwelling owned by **you** on the **residence premises**; and
   B.   structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

\* \* \*

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises:**
1.   **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

\* \* \*

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1.   used or held for any **business** or commercial farming purposes; or
2.   rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

\* \* \*

**CAUSES OF PROPERTY LOSS**

**SECTION I - LOSSES WE COVER**
**(SPECIAL PERILS)**

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**We** will pay only when a loss caused by **hurricane windstorm** exceeds the deductible amount shown in the Declarations as Hurricane Windstorm Loss deductible.  **We** will pay only that part of the loss over such deductible.  The deductible will apply to all Section I losses resulting from **hurricane windstorm** (including Loss of Use.)

The person(s) named in the Declarations may change this deductible only at the policy anniversary date.

**Hurricane Windstorm "% Deductible"**
If the deductible is shown as a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of insurance for Coverage A (Coverage C for Renters and Condominium Owners).

However, if a covered loss caused by fire, smoke, or explosion resulting from **hurricane windstorm** occurs, the policy loss deductible applies.

***

**COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES**

***

**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C, when loss or damage is caused by **SECTION 1 – BROAD NAMED PERILS**, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

**SECTION I - BROAD NAMED PERILS**

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage to the property which results directly or indirectly from **fungus and mold**.

However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.    discharge,
b.    leakage, or
c.    overflow

---

**DEFENDANT METROPOLITAN LLOYDS INSURANCE**
**COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 4**

of water or steam if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:
a.    detect,
b.    measure,
c.    evaluate, or
d.    confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

\* \* \*

2.    **"Windstorm (Other Than Hurricane Windstorm) or Hail".**
      **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

      **Hurricane Windstorm**
      **We** do not pay for loss to the interior of a building or to personal property, inside, caused by rain, sand, dust or debris unless the **hurricane windstorm** first damages the roof or walls and the **hurricane windstorm** forces rain, sand, dust or debris through the opening.

      **We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building.  **We** do not cover canoes and rowboats on the **residence premises**.

3.    **Definition.  "Hurricane windstorm"** means a storm system for which either a hurricane watch or a hurricane warning has been issued by the National Hurricane Center of the National Weather Service or any agency responsible for identifying and recording hurricanes.  The hurricane windstorm time period begins at the time either a hurricane watch or hurricane warning is issued for the state, or any part of the state, in which the **residence premises** is located.  The hurricane windstorm time period ends 24 hours following the termination of that storm system's last hurricane watch or hurricane warning in effect for any part of the state.

\* \* \*

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

1.  **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.  **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

    1.  flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
    2.  water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
    3.  water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

    This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

    However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

    <u>Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.</u>

\* \* \*

H.  **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2.  **We** do not insure under any coverage for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. below regardless of

whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.    conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

B.    defective, inadequate, faulty or unsound:
1.    planning, zoning, development, surveying, siting;
2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3.    materials used in repair, construction, renovation or remodeling; or
4.    maintenance;
of any property whether on or off the **residence premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    **We** do not cover loss or damage to the property described in <u>Coverage A.</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

B.    **fungus and mold**.
However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.    discharge,
b.    leakage, or
c.    overflow
of water or stream if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:

a.    detect,
b.    measure,
c.    evaluate, or
d.    confirm

the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

C.    settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

               * * *

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

               * * *

Pleading further, Defendant would also assert that Plaintiff has failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiff. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

               * * *

2.    **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us:**

A.    Promptly notify **us** or **our** representative.
In case of theft, promptly notify the police.
In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

B.    Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

C.    Cooperate with us in the investigation of a claim.

\* \* \*

E.   At any reasonable time and place **we** designate, and as often as **we** reasonably require:
  1.   show **us** the damaged property;
  2.   submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

\* \* \*

F.   Within 90 days after **our** request, the named insured must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
  1.   the time and cause of loss;
  2.   **your** interest and that of any other person in the property involved and all encumbrances on the property;
  3.   a description of each item, including all information contained in the inventory described above;
  4.   a description of other insurance policies that might apply to the loss;
  5.   any changes in ownership, use, possession or location of the property that took place since this policy was issued;
  6.   if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
  7.   specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
  8.   receipts for additional living expenses **you** incur and records supporting the fair rental value; and
  9.   evidence or affidavit supporting a claim under **SECTION 1 – ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forger and Counterfeit Money,** stating the amount and cause of loss.

\* \* \*

7.   **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers

submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

***

Pleading further, Plaintiff failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

Defendant asserts as an affirmative defense that it is incumbent on Plaintiff to segregate her covered damages, if any, due to any wind/hail/hurricane that allegedly occurred on or about August 25-29, 2017 from any other pre-existing and/or wind/hail/hurricane related damages.

As an additional affirmative defense, Defendant asserts that Plaintiff's damages at issue in this lawsuit, if any, are due to intervening, superseding causes wholly unrelated to Defendant and over which Defendant has and exercised no control.

Defendant affirmatively pleads that the damages sought by this lawsuit against it were, in whole or in part, caused by the neglect and/or intent and/or omissions of Plaintiff and/or third person(s) over whom Defendant did not control, had no right of control, and/or no duty over which to exercise control. Plaintiff's and/or these third person(s)' acts and/or omissions were the sole proximate cause, sole producing cause, proximate cause, or a cause of the injuries and damages alleged by Plaintiff and cannot be attributed to Defendant.

For further affirmative defense, Defendant asserts comparative fault.

For further affirmative defense, Defendant asserts contributory negligence and proportionate responsibility as a bar to Plaintiff's claims.

By way of additional affirmative defense, Defendant asserts that Plaintiff's damages, if any, were caused by a new and independent cause or causes not reasonably foreseeable by Defendant. This new and independent cause(s) was the immediate and efficient cause of injury, if any, to Plaintiff. The acts or omissions alleged by Plaintiff against Defendant were remote and were not the proximate or producing cause of any of any of Plaintiff's alleged damages.

Defendant affirmatively pleads the fortuity doctrine as a bar to recovery. Plaintiff cannot recover against Defendant for any pre-existing damages and/or damages that were already losses-in-progress.

By way of additional affirmative defense, Defendant asserts that Plaintiff is barred from recovery under the doctrine of concurrent causation.

As an additional defense, Defendant asserts the doctrine of excessive demand. In addition and without waiving the foregoing, Plaintiff's right, if any, to an award of attorney's fees is governed by application of TEX. INS. CODE § 542A.007.

## II. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

*[signature]*

By:    Dennis D. Conder
        State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of May, 2019, a copy of the foregoing was delivered to Plaintiff's counsel of record pursuant to the Texas Rules of Civil Procedure.

*[signature]*

Dennis D. Conder

PAN/PLDG/626266.1/001466.18102

5/30/2019 5:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 33990997
By: EVELYN PALMER
Filed: 5/30/2019 5:03 PM

CAUSE NO. 2019-31558

| | | |
|---|---|---|
| WANDA J. WALKER, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS AND | § | |
| JOHN CROUCH, | § | |
| | § | |
| Defendants. | § | 133RD JUDICIAL DISTRICT |

## DEFENDANT JOHN CROUCH'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW John Crouch, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every, all and singular, the allegations contained within Plaintiff's Original Petition, and demands strict proof thereon by a preponderance of the credible evidence in accordance with the Constitution and laws of the State of Texas.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiff for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiff is not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiff by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

### COVERAGE A - DWELLING
1. **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   - A. the dwelling owned by **you** on the **residence premises**; and
   - B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

### COVERAGE B – PRIVATE STRUCTURES
At the location of the **residence premises:**
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

* * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

* * *

### CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (SPECIAL PERILS)

---

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**We** will pay only when a loss caused by **hurricane windstorm** exceeds the deductible amount shown in the Declarations as Hurricane Windstorm Loss deductible. **We** will pay only that part of the loss over such deductible. The deductible will apply to all Section I losses resulting from **hurricane windstorm** (including Loss of Use.)

The person(s) named in the Declarations may change this deductible only at the policy anniversary date.

**Hurricane Windstorm "% Deductible"**
If the deductible is shown as a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of insurance for Coverage A (Coverage C for Renters and Condominium Owners).

However, if a covered loss caused by fire, smoke, or explosion resulting from **hurricane windstorm** occurs, the policy loss deductible applies.

***

**COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES**

***

**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C, when loss or damage is caused by **SECTION 1 – BROAD NAMED PERILS**, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

**SECTION I - BROAD NAMED PERILS**

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage to the property which results directly or indirectly from **fungus and mold**.

However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.    discharge,
b.    leakage, or
c.    overflow

of water or steam if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:
a.     detect,
b.     measure,
c.     evaluate, or
d.     confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

* * *

2.     **"Windstorm (Other Than Hurricane Windstorm) or Hail".**
We do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

**Hurricane Windstorm**
**We** do not pay for loss to the interior of a building or to personal property, inside, caused by rain, sand, dust or debris unless the **hurricane windstorm** first damages the roof or walls and the **hurricane windstorm** forces rain, sand, dust or debris through the opening.

**We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building.   **We** do not cover canoes and rowboats on the **residence premises**.

3.     **Definition.   "Hurricane windstorm"** means a storm system for which either a hurricane watch or a hurricane warning has been issued by the National Hurricane Center of the National Weather Service or any agency responsible for identifying and recording hurricanes.  The hurricane windstorm time period begins at the time either a hurricane watch or hurricane warning is issued for the state, or any part of the state, in which the **residence premises** is located.  The hurricane windstorm time period ends 24 hours following the termination of that storm system's last hurricane watch or hurricane warning in effect for any part of the state.

* * *

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

1.    **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.    **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

    1.    flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

    2.    water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

    3.    water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

<u>Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.</u>

\* \* \*

H.    **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2.    **We** do not insure under any coverage for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. below regardless of

whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.    conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

B.    defective, inadequate, faulty or unsound:
  1.    planning, zoning, development, surveying, siting;
  2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  3.    materials used in repair, construction, renovation or remodeling; or
  4.    maintenance;
  of any property whether on or off the **residence premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    **We** do not cover loss or damage to the property described in Coverage A. and Coverage B which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

B.    **fungus and mold**.
However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
  a.    discharge,
  b.    leakage, or
  c.    overflow
  of water or stream if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:

a.     detect,
b.     measure,
c.     evaluate, or
d.     confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

C.     settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

\* \* \*

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss.  If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiff has failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiff. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

\* \* \*

2.     **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

A.     Promptly notify **us** or **our** representative.
In case of theft, promptly notify the police.
In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

B.     Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

C.     Cooperate with us in the investigation of a claim.

* * *

E.     At any reasonable time and place **we** designate, and as often as **we** reasonably require:

1.     show **us** the damaged property;

2.     submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

* * *

F.     Within 90 days after **our** request, the named insured must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:

1.     the time and cause of loss;

2.     **your** interest and that of any other person in the property involved and all encumbrances on the property;

3.     a description of each item, including all information contained in the inventory described above;

4.     a description of other insurance policies that might apply to the loss;

5.     any changes in ownership, use, possession or location of the property that took place since this policy was issued;

6.     if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;

7.     specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;

8.     receipts for additional living expenses **you** incur and records supporting the fair rental value; and

9.     evidence or affidavit supporting a claim under **SECTION 1 – ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forger and Counterfeit Money**, stating the amount and cause of loss.

* * *

7.     **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers

submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

\*\*\*

Pleading further, Plaintiff failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

Defendant asserts as an affirmative defense that it is incumbent on Plaintiff to segregate her covered damages, if any, due to any wind/hail/hurricane that allegedly occurred on or about August 25-29, 2017 from any other pre-existing and/or wind/hail/hurricane related damages.

As an additional affirmative defense, Defendant asserts that Plaintiff's damages at issue in this lawsuit, if any, are due to intervening, superseding causes wholly unrelated to Defendant and over which Defendant has and exercised no control.

Defendant affirmatively pleads that the damages sought by this lawsuit against him were, in whole or in part, caused by the neglect and/or intent and/or omissions of Plaintiff and/or third person(s) over whom Defendant did not control, had no right of control, and/or no duty over which to exercise control. Plaintiff's and/or these third person(s)' acts and/or omissions were the sole proximate cause, sole producing cause, proximate cause, or a cause of the injuries and damages alleged by Plaintiff and cannot be attributed to Defendant.

For further affirmative defense, Defendant asserts comparative fault.

For further affirmative defense, Defendant asserts contributory negligence and proportionate responsibility as a bar to Plaintiff's claims.

By way of additional affirmative defense, Defendant asserts that Plaintiff's damages, if any, were caused by a new and independent cause or causes not reasonably foreseeable by Defendant. This new and independent cause(s) was the immediate and efficient cause of injury, if any, to Plaintiff. The acts or omissions alleged by Plaintiff against Defendant were remote and were not the proximate or producing cause of any of any of Plaintiff's alleged damages.

Defendant affirmatively pleads the fortuity doctrine as a bar to recovery. Plaintiff cannot recover against Defendant for any pre-existing damages and/or damages that were already losses-in-progress.

By way of additional affirmative defense, Defendant asserts that Plaintiff is barred from recovery under the doctrine of concurrent causation.

As an additional defense, Defendant asserts the doctrine of excessive demand. In addition and without waiving the foregoing, Plaintiff's right, if any, to an award of attorney's fees is governed by application of TEX. INS. CODE § 542A.007.

## II. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing against Defendant, and that Defendant go henceforth without day, with his costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show himself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By:      Dennis D. Conder
         State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
JOHN CROUCH

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of May, 2019, a copy of the foregoing was delivered to Plaintiff's counsel of record pursuant to the Texas Rules of Civil Procedure.

Dennis D. Conder

PAN/PLDG/626267.1/001466.18102

**DEFENDANT JOHN CROUCH'S ORIGINAL ANSWER - PAGE 12**